FILED

2023 Jan-31  PM 01:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SEAN DENARD NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-101-GMB |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On October 22, 2018, Plaintiff Sean Denard Nelson filed applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") with an amended alleged disability onset date of September 26, 2018.  After three hearings,  an administrative law judge ("ALJ") denied Nelson's claim on May 21, 2021.  Nelson appealed the decision, and on December 2, 2021, the Appeals Council denied his request for review.  As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of December 2, 2021.

Nelson's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to the full jurisdiction of a United States Magistrate Judge.  Doc. 11 at 1–2.  Based on a review of the parties' submissions, the relevant law,

and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "'if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion.'" *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "'inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).   A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).   Nelson bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).   The Commissioner must determine in sequence:

(1)   Is the claimant presently unable to engage in substantial gainful activity?
(2)   Are the claimant's impairments severe?
(3)   Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)   Is the claimant unable to perform his former occupation?
(5)   Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).

"'An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.   A negative answer

to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Nelson was born in 1966, so he was 52 years old on his alleged onset date and 55 years old on the date of the ALJ's decision. R. 89.  In his disability report, Nelson alleged that "heart problems," post-traumatic stress disorder ("PTSD"), HIV, and "gastro issues" limit his ability to work. R. 275.  Nelson most recently worked as a marketing director and maintenance director at a nursing home facility from 2000 to 2018. R. 58, 92.  In these positions, at various times Nelson visited hospitals to assess patients and their charts, cleaned the building, or supervised the cleaning of the building. R. 58.  He completed two years of college and is currently enrolled in system sources management courses at a community college. R. 91.

The ALJ held hearings in Nelson's case on December 18, 2019; June 9, 2020; and February 2, 2021. R. 52–108.  At the first hearing, Nelson testified that he can only stand in one spot for 20 to 30 minutes before having to move and can walk only 10 to 15 feet before he needs to take a break, stretch his back, or lay on the floor for

hours. R. 96.  Nelson also explained that he received monthly counseling for his PTSD. R. 99.  Nelson testified that he can bathe and dress himself, and during a typical day he studies, reads, listens to podcasts, shops for groceries, does laundry, and cooks. R. 64, 101.

During the first hearing, the ALJ received evidence from a Vocational Expert ("VE"), who offered the opinion that Nelson could not do his previous work but could perform other work at the light exertional level, including jobs as a cashier, mail clerk, or office helper. R. 105–106.  When the ALJ asked the VE to consider a hypothetical with a sedentary exertional level, the VE testified that this person would not be able to perform Nelson's past work and also observed that Nelson does not have any transferrable skills from his past work to sedentary work. R. 107.

During the third hearing,[2] Nelson testified that he has arthritis in his back, bone degeneration in his shoulder, and a double groin hernia. R. 59.  Nelson also stated that he has swollen lymph nodes in his legs and had scheduled a surgery to address these health issues. R. 59.  He testified that he could pick up a gallon of milk, complete routine household chores, cook, clean without pushing or pulling, and stand up or pull a chair next to a stove or counter. R. 64.  Nelson takes blood pressure medication and oxycodone for his back pain. R. 61.   Nelson testified that his

---

[2] At the second hearing, the ALJ primarily focused on identifying the outstanding records he needed in the case and left the record open to obtain those records. R. 76–83.

clinicians advised him there is nothing they can do for his arthritis but recommended that he exercise and perform stretches. R. 63.

During the third hearing, the ALJ again received evidence from a VE, who offered the opinion that Nelson could do his previous work at the light exertional level. R. 67.  When the ALJ asked the VE to consider a hypothetical with the exertional level at sedentary, the VE testified that this person would be able to perform Nelson's past jobs at the sedentary level, but not at the light level, as Nelson reported performed them. R. 67–68.  The VE also mentioned that an individual who would be expected to miss four or more days of work per month due to medical conditions associated with pain and side effects of medication would be precluded from Nelson's past work or any other work in competitive employment. R. 68.

Nelson submitted a number of medical records to the ALJ to support his claim of disability.   Treatment records from Dr. Ivan Guerrero addressed Nelson's treatment for syphilis. R. 371–73, 378, 385.  The medical record from December 2017 showed successful treatment for syphilis in January 2016. R. 38, 371–73. Nelson submitted outpatient records from Grandview Medical Center relating to an inguinal hernia diagnosis. R. 38, 956–1037.  The record confirms Nelson had outpatient surgery without complications on February 9, 2021 (R. 996, 1019, 1026), and was discharged to return home with no future appointments. R. 996, 998.

As to his mental impairments, Nelson submitted several medical records

reflecting consistent alcohol and marijuana use (R. 482, 487, 579, 586, 593, 951), and repeatedly noting Nelson as cooperative or having appropriate mood and affect during psychiatric treatment visits. R. 488, 531, 592, 594, 952.  Nelson's records reflect that he exhibited anxiety or depression at times, along with consistent medical compliance issues, particularly in his medication regimen. R. 648, 653, 663, 670, 678, 701, 1051, 1069, 1073, 1079.  Nelson often presented with normal speech and goal-directed thoughts, and as being friendly and cooperative. R. 648, 654, 678, 711, 1052, 1056, 1069, 1073, 1080.  And Nelson consistently had coherent speech with unremarkable rate, rhythm, quality, and volume, and had no difficulty finding words to express himself. R. 648, 654, 672, 678, 702, 711, 1052, 1056, 1069, 1073, 1080.

In his Function Report, Nelson professed that he had the ability to perform multi-step activities, such as caring for his pets, preparing meals, doing laundry, shopping online and in-stores, and playing games on his cell phone R. 39, 290–297. Nelson claimed that he could only pay attention for ten minutes (R. 295), and that he could drive, read, watch television, play games on his cellphone, shop, and follow instructions. R. 290, 293–295.

Nelson's treatment records reflect many reports that he was not in pain and frequent findings of stable conditions.  These notes include:

- During numerous 2020 therapy sessions, Nelson reported having no acute pain. R. 1064, 1073, 1080, 1086.
- In January 2020, Nelson had successful treatment for stenosis of the mid-AV circumflex artery. R. 934–935.  During this visit,

Nelson denied having abdominal pain or fever. R. 934.  During his cardiac follow-up visit in June 2020, Nelson denied chest pain, shortness of breath, or lower extremity edema. R. 923.

- In April 2018 and January 2020, Nelson's treatment records indicate his HIV was stable. R. 943, 376.
- During a clinical visit with Dr. Ivan Guerrero in April 2018, Nelson denied joint pain. R. 375.

Applying the sequential evaluation process, the ALJ found that Nelson has not engaged in substantial gainful activity since his alleged onset date of September 26, 2018. R. 37.  At step two, he found that Nelson suffered from the following severe impairments: HIV, degenerative disc disease, coronary artery disease, arthritis, hypertension. R. 38.  The ALJ noted that these medically determinable impairments significantly limit Nelson's ability to perform basic work activities. R. 38.  At step three, the ALJ found that Nelson did not have an impairment or combination of impairments meeting or medically equal to the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 40–41.

Before proceeding to step four, the ALJ determined that Nelson had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

Occasionally climb ramps and stairs; occasionally balance, stoop, kneel, and crouch; but never crawl.  The individual can have occasional exposure to extreme heat and cold; occasional exposure to vibration; should avoid all hazardous machinery and unprotected heights.

R. 41.  The ALJ relied on the VE's testimony to find that a person with Nelson's limitations could work his past jobs as they are customarily performed. R. 45.  Thus,

at step five of the five-step sequential process, the ALJ found that Nelson was not disabled within the meaning of the Social Security Act from September 26, 2018, through the date of the decision. R. 45.

## IV.  DISCUSSION

On appeal, Nelson makes two arguments.  Nelson first claims that the ALJ failed to evaluate all of the evidence in his assessment of the severity of Nelson's symptoms. Doc. 14 at 6.  Second, Nelson contends that the ALJ failed to perform a function-by-function assessment of his physical capacity and mental functions. Doc. 14 at 9.  For the following reasons, the court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the proper standards to reach his conclusions.

## A.    Pain Standard

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote*, 67 F.3d at 1561.  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v.*

*Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

An ALJ may discredit the claimant's subjective testimony of pain and other symptoms if she articulates adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit credibility findings, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be incorporated into an ALJ's credibility determination, but a "broad rejection" is "not enough to enable [the district court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ determined that Nelson's "medically determinable impairments could reasonably be expected to cause some of his alleged symptoms," but his "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record." R. 42. The ALJ thoroughly examined the medical evidence in the record to determine that Nelson's statements concerning his impairments and their

11

impact on his ability to work were not entirely consistent with the information in his treatment notes and imaging records. R. 43.  The ALJ explained that he did "not find the claimant was at all times symptom free," but the evidence did not "support the degree of limitation the claimant alleged at any time since his alleged onset date." R. 43.

The ALJ considered Nelson's subjective complaints and the objective treatment records, and he articulated the reasons for his finding. R. 40–45; *see Foote*, 67 F.3d at 1562.  Specifically, the ALJ found that Nelson often presented with a normal gait, no swelling of  his lower extremities, and pain-free normal range of motion. R. 42.  And Nelson's treatment notes show that his coronary artery disease, hypertension, syphilis, and HIV were stable with treatment and medication, and caused few, if any, symptoms. R. 42.  Nelson also had a successful outpatient surgery for his inguinal hernia diagnosis. R. 38.  Additionally, the ALJ found that Nelson's complaints of disabling pain were inconsistent with the following medical evidence:

- In February 2021, Nelson had outpatient bilateral inguinal hernia surgery with no complications at Grandview Medical Center. R. 996, 1019, 1026.  Nelson was discharged to home/self-care, with no future appointments. R. 996, 998.
- In January 2020, Nelson received successful treatment for stenosis of the mid-AV circumflex artery. R. 934–935.  During this visit, Nelson denied having abdominal pain or fever. R. 934. In June 2020, during his cardiac follow-up visit, Nelson denied chest pain, shortness of breath, or lower extremity edema. R. 923.
- In numerous 2020 therapy sessions, Nelson reported having no acute pain. R. 1064, 1073, 1080, 1086.
- In April 2018 and January 2020, Nelson's treatment records

indicate his HIV was stable. R. 943, 376.

- In April 2018, during a clinical visit with Dr. Ivan Guerrero, Nelson denied joint pain. R. 375.
- In January 2016, Nelson was successfully treated for syphilis. R. 38, 371–37.  Treatment records show that Nelson completed three weekly injections to treat the syphilis. R. 373, 378, 385.
- Nelson testified that he could pick up a gallon of milk, complete routine household chores, cook, clean if it does not include pushing and pulling, and stand up or pull a chair next to the stove or counter. R. 64.
- Throughout his psychiatric treatment notes, Nelson repeatedly presented as cooperative or with appropriate mood and affect. R. 488, 531, 592, 594, 952.  Nelson often presented with normal speech and goal-directed thoughts, and as friendly and cooperative. R. 648, 654, 678, 711, 1052, 1056, 1069, 1073, 1080.
- During clinical visits with Dr. Yesenia Baez in September 2013 and October 2014, Nelson's physical exam documentation reflects that he presented "well developed" and "well nourished." R. 388, 390. More recently, during January and February 2020 cardiovascular treatments, Nelson was also described as being "well developed" and "well nourished." R. 928, 952.

The court agrees that Nelson's medical records do reflect some symptoms, but they also reflect numerous pain-free reports, successful syphilis and cardiac treatments, and consistently positive presentation during routine medical and therapy visits spanning several years.

Finally, the record reflects that Nelson could complete household chores, cook, clean, care for his pets, prepare meals, do laundry, shop online and in-stores, and play games on his cell phone. R. 39, 64, 290–297.  These activities further undermine his claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*,

776 F. App'x 599, 603 (11th Cir. 2019) (holding the ALJ properly found subjective complaint inconsistent with a record of simple daily activities).  This evidence underscores the ALJ's finding that Nelson's testimony about his symptoms was not entirely consistent with the medical evidence.

Having considered the ALJ's opinion and all of the record evidence, the court finds there was substantial evidence to support the ALJ's determination that Nelson's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence, and that the ALJ applied the correct legal standards in arriving at his decision.

**B.      Functional Analysis**

Nelson's second claim is that the ALJ violated SSR 96-8p in not performing a function-by-function assessment of Nelson's "ability to perform all the functions required of his prior relevant work, which was performed at the light level and skilled." Doc. 14 at 5.  The Commissioner contends that substantial evidence supports the ALJ's assessment of Nelson's RFC, and "[g]iven the substantial evidence discussed by the ALJ . . . , [he] was not required to specifically discuss Plaintiff's ability to perform work on a sustained basis or each of the exertional demands of light work." Doc. 15 at 13–14.  The court finds that substantial evidence supports the ALJ's determination and that he applied the proper standards to reach his conclusions.

Social Security Ruling 96-8p dictates that an RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d)" of 20 CFR §§ 404.1545 and 416.945. SSR 96-8p, 1996 WL 374184, at *1.  The RFC "is not the least an individual can do despite . . . her limitations or restrictions, but the most." *Id.*  Ruling 96-8p mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describ[ing] the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id*. at 7.  Additionally, the assessment of a claimant's RFC must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence" and "[i]nclude a resolution of any inconsistencies in the evidence as a whole; and set forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." *Id*.  The RFC assessment "must be based on all of the relevant evidence in the case record, such as: medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, evidence from attempts to work, need for a structured living environment, and work evaluations, if available." *Id*. at 5.

It is the ALJ's exclusive responsibility to assess the claimant's RFC. *Moore*

*v. Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016).  The ALJ need not enumerate every piece of evidence used in that determination, but his decision must be detailed enough for the court to conclude that he considered the claimant's medical condition in totality. *Dyer*, 395 F.3d at 1211 (citing *Foote*, 67 F.3d at 1561).  The Eleventh Circuit has held that, even when the ALJ could have been "more specific and explicit" in her findings about a claimant's "functional limitations and work-related abilities on a function-by-function basis," those findings nonetheless satisfy the requirements of Ruling 96-8p if the ALJ considered all of the evidence. *Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (rejecting the need for specific reference to every piece of evidence when "the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole").

Here, the ALJ's decision makes clear that he completed a function-by-function assessment based on all of the relevant evidence of Nelson's ability to perform work-related activities.  Specifically, the ALJ addressed Nelson's primary complaints of pain from degenerative disc disease, arthritis in his shoulder, and hernia in his groin. R. 41.  The ALJ referenced Nelson's anticipated surgery, which was accomplished without complications on February 9, 2021. R. 996, 998, 1019, 1026.  The ALJ also highlighted how Nelson's providers told him there was nothing

more they could do about his back pain other than to recommend continued exercise, and Nelson testified that he performs daily stretches. R. 41.

The ALJ noted that Nelson has medically determinable impairments that could reasonably cause some of his alleged symptoms and that the medical evidence of record confirms a history of severe impairments, but found that the objective evidence does not show that these symptoms support a more restrictive RFC. R. 42. In support of this finding, the ALJ specifically referenced treatments notes reflecting that Nelson's coronary artery disease, hypertension, and HIV are stable with treatment and medication. R. 42.  While the medical records showed mild changes and degeneration (R. 42, 685–86), the ALJ noted that Nelson had therapy for the back pain in July 2019 and was to continue weekly physical therapy sessions. R. 646, 660.  Nelson's treatment records show he continually denied pain during visits with his doctors and during these therapy sessions. R. 375, 558, 1064, 1073, 1080, 1086.

As to Nelson's mental abilities, the ALJ referenced a number of Nelson's mental health treatment and therapy notes. R. 39.  For example, in November 2019, Nelson reported having depression and anxiety, but his mental status examination showed he was appropriately groomed and dressed; "[h]e was friendly, oriented and made good eye contact"; "[h]is speech was coherent and unremarkable, his mood anxious with congruent affect"; and his thoughts were "goal directed with fair insight

and judgment." R. 39 (citing R. 643–94).   Similarly, in January 2021, Nelson's symptoms were "at baseline" and he presented as "friendly and oriented with coherent speech." R. 39 (citing R. 1045–1113).   Other notes show Nelson was encouraged to maintain medication compliance (R. 39), yet consistently admitted he was not taking his medications as prescribed. R. 653, 663, 701, 1051, 1073, 1079. The ALJ also considered Nelson's noncompliance with his medication regime in his finding that Nelson's mental impairments do not cause more than a minimal limitation. R. 38, 45.   Finally, the ALJ referenced Dr. Robert Estock's earlier administrative finding that Nelson "did not have any medically determinable mental health impairments." R. 44.

Based on this thorough discussion of the relevant evidence in the record, the court finds that the ALJ completed a function-by-function assessment of Nelson's RFC.  Therefore, Nelson's challenge to his RFC determination fails.

Nelson also claims that the ALJ should have performed a function-by-function analysis of his past relevant work when the ALJ made a legal finding that he could return to his former employment. R. 45.  This contention is not supported by the record.   Instead, the ALJ based his findings on the vocational expert's testimony and compared Nelson's RFC with the physical and mental demands of his previous job. R. 45.  Only then did the ALJ find that Nelson was able to perform the job as actually and generally performed. R. 45.  Taken as a whole, substantial

evidence supports the ALJ's determination that Nelson has the RFC to perform light work, including his past employment, and the ALJ did not err when he concluded that Nelson is not disabled.

## V.  CONCLUSION

Upon review of the administrative record, and considering all of Nelson's arguments, the court finds the Commissioner's decision is supported by substantial evidence and based on the proper legal standards.  Accordingly, the decision is due to be affirmed.  A final judgment will be entered separately.

DONE and ORDERED on January 31, 2023.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE